THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, *et al.*, Plaintiffs-Appellants, v. ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0394

Opinion filed March 4, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Allen Samelson, Assistant Attorney General, of counsel), for appellants.

Hercules F. Bolos and Thomas J. Russell, Special Assistant Attorneys General, both of Chicago, for appellees.

JUSTICE MILLS delivered the opinion of the court:
Open Meetings Act.

But this is really a case of *mootness*.

The trial court said the suit was moot—and we agree.

We perceive no exceptions to the mootness doctrine present here. We affirm.

The Attorney General filed a complaint in the circuit court on December 2, 1983, naming the Illinois Commerce Commission (Commission) and its commissioners as defendants. The complaint alleged that the Commission convened a meeting closed to the public on October 18, 1983, and discussed issues relating to economic reasonableness of completing a nuclear power station at Clinton. After the meeting, the Commission announced that it decided against conducting formal proceedings regarding the completion of the power station. The complaint further alleged that the October 18 meeting violated the Open Meetings Act (Ill. Rev. Stat. 1983, ch. 102, par. 41 *et seq.*) and sought the following relief: (a) a *mandamus* commanding the defendants to "receive and consider publicly the information upon which the Commission based its decision not to conduct a formal proceeding regarding the Clinton cancellation issue"; (b) an injunction enjoining defendants from holding future meetings in violation of the Open Meetings Act; and (c) other relief as the court deemed appropriate.

Leave to file an amended complaint was granted on March 22, 1984. The amended complaint contained six counts. The first three counts essentially restated the allegations of the original complaint and requested the additional relief of a declaratory judgment stating that the defendants violated the Open Meetings Act. Counts IV through VI alleged that the defendants had also convened on October 13, 1983, to discuss the Clinton power station. The latter three counts alleged that this meeting also violated the Open Meetings Act. Count IV sought a declaratory judgment that defendants violated the Open Meetings Act by meeting on October 13, 1983. Count V requested a *mandamus* ordering defendants to receive and consider publicly the information gathered and discussed at the October 13 meeting. Count VI sought an injunction enjoining defendants from holding future meetings in violation of the Open Meetings Act.

The defendants filed a motion to dismiss, stating numerous grounds for dismissal, including mootness. Defendants argued that the suit was moot because the Commission announced on February 1, 1984, that the issue of the economic reasonableness of completing the Clinton power station would be docketed for a public hearing. At the hearing on the motion to dismiss, the Attorney General did not dispute that the Commission planned to conduct a public hearing of the issues relating to the power station. The trial court allowed the mo-

tion on the grounds that the issues raised by the complaint were moot. The Attorney General appeals from the order dismissing his complaint.

An issue is moot where no actual rights or interests of the parties remain or where events occur which render it impossible for the reviewing court to grant effectual relief to either party. (*West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 404 N.E.2d 208; *Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 384 N.E.2d 1309; *People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 237, 278 N.E.2d 81.) Events occurring during the pendency of litigation which "dissipate" the controversy on which the litigation was founded may render the case moot. *People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 237, 278 N.E.2d 81.

The present litigation was founded on alleged violations of the Open Meetings Act. The express purpose of this Act is to require public bodies to conduct their deliberations and actions openly. (See Ill. Rev. Stat. 1981, ch. 102, par. 41; *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 332 N.E.2d 649.) To this end, the Act identifies the public bodies and types of meetings subject to the Act and provides the procedures by which the open meetings are to be conducted. These procedures are, of course, the heart of the Act. Remedies which the trial court may grant upon a finding of noncompliance with the Act include granting a *mandamus* requiring that a meeting be open to the public, ordering the public body to make available to the public portions of the minutes of a meeting which are not authorized, and declaring null and void any final action taken at a closed meeting in violation of the Act. Ill. Rev. Stat. 1981, ch. 102, par. 43(c).

■■ The specific allegations in the present case were that the Commission had met twice, in closed meetings, to discuss the economic reasonableness of completing the nuclear power station in Clinton and that the Commission concluded from these meetings that it would not conduct formal proceedings in considering this issue. Presuming for the moment that the allegations stated a violation of the Open Meetings Act, we find that the Commission itself effectively remedied the violation by first voiding its decision to not conduct formal proceedings and then providing for a public hearing of the issues. This action by the Commission essentially provided the Attorney General with what he basically sought in his complaint and, thereby, dissipated the controversy upon which the litigation was founded. Accordingly, the trial court correctly found that the issues raised by the complaint were moot.

The Attorney General argues that, despite the Commission's deci-

sion to conduct a public hearing, the trial court should have granted the relief sought in the complaint, namely: a declaratory judgment stating that the Commission had violated the Open Meetings Act; a *mandamus* directing the defendants to receive publicly the information which it considered during the closed meetings; and an injunction prohibiting the Commission from holding future meetings in violation of the Open Meetings Act.

■ Certainly it would have been possible for the trial court to grant such relief. But the test for mootness, as stated in *West Side Organization Health Services*, is not whether it is possible to grant the relief requested, but rather, whether it is possible to grant *effectual* relief. As stated above, the subsequent actions of the Commission effectively provided the relief which the Attorney General had sought in his complaint. Little could now be gained by granting the Attorney General a declaratory judgment stating that the Commission had violated the Act or by ordering the Commission to publicly receive information it had considered in the closed meetings.

■ With respect to an injunction prohibiting future violations of the Act, the Attorney General has indicated in his appellant's brief and at oral arguments that he desires to enjoin not only the recurrence of closed meetings relating to the completion of the Clinton power station, but also any and all future violations of the Open Meetings Act by the Commission. Such relief is particularly inappropriate here.

The foundation stone of the mootness doctrine is that a court should not resolve a question merely for the sake of setting a precedent or to govern future cases. (*West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 404 N.E.2d 208; *People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 307, 278 N.E.2d 81.) The injunction sought by the Attorney General would be for the sole purpose of governing future litigation. Moreover, it would be simply impractical for a trial court to draft an injunction which is completely divorced from either an existing or supposed state of facts.

We are aware that section 3(c) of the Act (Ill. Rev. Stat. 1981, ch. 102, par. 43(c)) specifically authorizes the trial court to enjoin future violations of the Act. However, this remedy must be understood in light of the fact that, for most public bodies, there are no exceptions to the procedural requirements of the Act. As a general matter, most public bodies are prohibited from conducting closed meetings under any circumstances. The Commerce Commission, however, stands on different footing. The Act has been amended to provide numerous exceptions for certain meetings of the Commerce Commission. The

amendment provides:

"All meetings of public bodies shall be public meetings except for *** that portion of the deliberations for decisions of the Illinois Commerce Commission in which there is discussed any of the following: commercial, financial or other information which is obtained from a person and which is privileged, proprietary, confidential, or a trade secret; information relating solely to the internal rules, practices, investigation techniques and procedures of the Commission; information the premature disclosure of which would be likely to lead to significant financial speculation in securities of a regulated entity or to significantly endanger the stability of any regulated entity; information the premature disclosure of which would be likely to significantly frustrate implementation of a proposed Commission action; information obtained during the course of an inspection, examination or investigation which would be subject to the prohibition set forth in Section 18 of 'An Act concerning public utilities' approved June 29, 1921, as amended; or information specifically exempted from disclosure by federal or state law ***." Ill. Rev. Stat., 1983 Supp., ch. 102, par. 42.

The Commission, unlike many other public bodies, has been and will be authorized to conduct closed meetings. A broadly worded, open-ended injunction in the hands of the Attorney General prohibiting the Commission from violating the Open Meetings Act could seriously impair the efficient operation of the Commission's business. On the other hand, a similar injunction against a public body which is not authorized to conduct closed meetings would be relatively less detrimental to the operations of that body.

We have reviewed the cases cited by the Attorney General on the "public interest" exception to the mootness doctrine and find that none are analogous to the present case. Moreover, the considerations which have led to our finding of mootness far outweigh any public interest in a determination of whether the Commission violated the Open Meetings Act on October 13 and 18, 1983.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.